Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone: 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Penelope Ann Harod, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Southwest Airlines Co., a Texas corporation,<br><br>Defendant. | **Case No. 2:26-cv-05215-JFM**<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Through undersigned counsel, Plaintiff Penelope Ann Harod ("Penelope" or "Plaintiff"), for her First Amended Complaint against Defendant Southwest Airlines Co. ("Southwest" or "Defendant"), alleges as follows:

## INTRODUCTION

1. This action arises from Southwest's removal of Penelope from an aircraft after its employees mistook manifestations of her documented neurological and motor disabilities for intoxication.

2. Penelope had consumed no alcohol that day and had used no illicit or non-prescribed drugs. She complied with Southwest's instructions and engaged in no threatening, disruptive, or unsafe conduct.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3. Penelope told Southwest's employees that her slurred speech and difficulty with balance and gait were caused by her disability. The employees refused to credit her explanation and removed her from the aircraft.

4. Southwest did not make an individualized assessment based on objective evidence, consider a reasonable modification, or use a less restrictive response before denying transportation.

5. Penelope brings state-law negligence claims. She relies on the Air Carrier Access Act and 14 C.F.R. Part 382 only to define the standard of care governing Southwest's disability-related conduct. She does not assert a private cause of action under those federal provisions or under Title III of the Americans with Disabilities Act.

**PARTIES**

6. Plaintiff Penelope Ann Harod is a natural person domiciled in Arizona and is a citizen of Arizona.

7. At the time of the events alleged, Penelope was 60 years old and had documented neurological and motor impairments that substantially limit major life activities, including walking and speaking.

8. Defendant Southwest Airlines Co. is incorporated under Texas law and maintains its principal place of business in Dallas, Texas. Southwest is a citizen of Texas.

9. Southwest is a domestic air carrier that sells and provides scheduled passenger air transportation throughout the United States, including regular service into and out of Phoenix Sky Harbor International Airport.

10. At all relevant times, the Southwest employees involved in the events alleged were acting within the course and scope of their employment and in furtherance of Southwest's business. Southwest is responsible for their acts and omissions.

## JURISDICTION/VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Penelope and Southwest are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has specific personal jurisdiction over Southwest. Southwest regularly operates flights into and out of Arizona, markets and sells air transportation to Arizona residents, and contracts to carry passengers into Arizona.

13. The transaction at issue was directed to Arizona. Penelope held a Southwest ticket for travel from Milwaukee, Wisconsin, to Phoenix, Arizona, on a Southwest itinerary. Phoenix was the final destination identified in Southwest's own ticketing records.

14. Southwest accepted Penelope's fare and undertook to carry her to Phoenix. Performance of that undertaking was intended to culminate in Arizona.

15. Penelope's claims arise out of and relate to Southwest's Arizona-directed activity. But for the Phoenix-bound itinerary, Penelope would not have boarded the Southwest aircraft, interacted with Southwest's employees, or suffered the injuries alleged here.

16. The exercise of jurisdiction is reasonable. Southwest deliberately serves the Arizona market and could reasonably anticipate suit in Arizona arising from its performance of a contract to carry an Arizona resident to Phoenix.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17. Venue is proper because Southwest removed this action from Maricopa County Superior Court to this Court under 28 U.S.C. § 1441(a).

18. Southwest filed its motion to dismiss on August 13, 2026. Penelope files this First Amended Complaint once as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B).

## FACTUAL ALLEGATIONS

19. Penelope's disability causes slurred speech and difficulty with balance and gait. Those symptoms may resemble intoxication to an uninformed observer even when Penelope is sober.

20. On October 20, 2024, Penelope held a valid Southwest ticket for air transportation from Milwaukee to Phoenix. Southwest's ticket number for her travel was 5262573175330.

21. Penelope presented herself for transportation, received assistance boarding, boarded the aircraft, and complied with Southwest's instructions.

22. Penelope did not threaten anyone, act violently, interfere with the crew, refuse an instruction, or engage in any conduct that endangered the flight or another person.

23. Penelope's husband drove her to the Milwaukee airport. After dropping her off, he drove approximately an hour and a half away to attend a concert with his brother.

24. After Penelope boarded, multiple Southwest employees approached her and accused her of being intoxicated based on her speech, balance, and gait.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25. Penelope told the employees that she was disabled and that her speech, balance, and gait were manifestations of her disability, not alcohol or drugs.

26. Penelope had not consumed alcohol that day. She had not used illicit drugs or any prescription drug that was not prescribed to her.

27. Penelope was able and willing to comply with all safety requirements. Her disability did not prevent her from traveling safely.

28. The employees refused to listen to or credit Penelope's explanation. They did not identify objective evidence that she had consumed alcohol or drugs and did not meaningfully assess whether her disclosed disability accounted for what they observed.

29. Apart from Penelope's disability-related appearance and involuntary manifestations, the employees identified no conduct suggesting that she posed a direct threat to the health or safety of any person.

30. Southwest nevertheless removed Penelope from the aircraft and denied her transportation on the scheduled itinerary.

31. The removal occurred publicly and communicated to nearby passengers and personnel that Penelope was intoxicated or otherwise unfit to travel. She was humiliated because of symptoms she could not control.

32. The removal stranded Penelope in Milwaukee after her husband had traveled approximately an hour and a half away.

33. Penelope had to call her husband, explain what Southwest had done, and wait for him to abandon his plans and return to retrieve her.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

34. Penelope and her husband then had to secure lodging in Wheeling, Illinois, for two additional days and arrange replacement travel.

35. Two days later, Penelope traveled to Phoenix through Las Vegas. She exhibited the same disability-related speech, balance, and gait but encountered no boarding or safety problem on that trip.

36. Southwest's conduct caused Penelope to lose the timely transportation she purchased, incur additional lodging, ground-travel, and replacement-transportation expenses, and remain away from her home for two additional days.

37. The incident also caused severe emotional distress, humiliation, and loss of dignity. Penelope was the direct object of the accusation and removal. Her injury was not a reaction to harm suffered by another person.

38. Multiple Southwest employees responded to Penelope's disability disclosure in the same uninformed and inflexible manner. Their coordinated response supports a reasonable inference that Southwest had not adequately trained or supervised them to recognize and respond to disability manifestations.

39. The Air Carrier Access Act prohibits an air carrier from discriminating against an otherwise qualified individual because of disability in providing air transportation. 49 U.S.C. § 41705(a).

40. At the time of the occurrence, 14 C.F.R. § 382.11(a)(1) and (3) prohibited Southwest from discriminating against a qualified individual because of disability or excluding that individual from air transportation or related services available to other persons.

41. Section 382.13 required Southwest to modify its policies, practices, or facilities when needed to provide nondiscriminatory service to a particular passenger with a disability unless the modification would create an undue burden or fundamental alteration.

42. Section 382.19(a) and (b) prohibited Southwest from refusing transportation because a disability resulted in an appearance or involuntary behavior that might offend, annoy, or inconvenience crewmembers or other passengers.

43. If Southwest relied on safety under 49 U.S.C. § 44902(b), § 382.19(c) required an individualized assessment based on reasonable judgment and the best available objective evidence. Southwest was required to consider the nature and probability of any risk, reasonable modifications that would mitigate the risk, and the least restrictive response consistent with safety.

44. Section 382.141(a)(1) and (2) required Southwest to train public-facing personnel to proficiency concerning Part 382, Southwest's procedures, appropriate responses to passengers with disabilities, and distinctions among differing abilities.

45. These provisions govern the specific disability-related conduct alleged here and supply the standard of care for Penelope's state-law claims. Penelope seeks state-law remedies for Southwest's breach of that standard.

**COUNT I**

**NEGLIGENCE**

48. Penelope incorporates the preceding paragraphs.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

49. Southwest owed Penelope a duty to exercise reasonable care in providing air transportation and in deciding whether to remove or refuse transportation to a passenger who disclosed a disability.

50. The standard governing that duty included the requirements of 49 U.S.C. §§ 41705 and 44902 and 14 C.F.R. §§ 382.11, 382.13, and 382.19.

51. Southwest breached its duty by treating disability-related speech, balance, and gait as intoxication; disregarding Penelope's disability disclosure; failing to rely on objective evidence; failing to make the required individualized assessment; failing to consider a reasonable modification or less restrictive response; and removing her from the aircraft.

52. The involved employees committed those acts and omissions within the course and scope of their employment. Southwest is responsible for their conduct.

53. Southwest's breach caused Penelope's removal, stranding, two-day travel delay, direct out-of-pocket losses, severe emotional distress, humiliation, and loss of dignity.

54. Penelope was the direct object of Southwest's conduct. Her distress was not derivative of an injury to anyone else. It arose from being publicly branded as intoxicated, having her disability explanation rejected, being expelled from the aircraft, and being left stranded far from home.

55. That distress was severe and was a foreseeable result of Southwest's conduct.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**COUNT II**

**NEGLIGENT TRAINING AND SUPERVISION**

56. Penelope incorporates the preceding paragraphs.

57. Southwest owed its passengers a duty to use reasonable care in training and supervising employees who make disability-related boarding and removal decisions.

58. Section 382.141 required Southwest to train those employees to proficiency concerning Part 382 and appropriate responses to passengers with disabilities.

59. A reasonably trained employee would know that slurred speech and impaired balance or gait can be disability manifestations rather than intoxication and would evaluate a disclosed disability before removing the passenger.

60. On information and belief, Southwest failed to train the involved personnel to proficiency, failed to verify their proficiency, and failed to supervise their application of Southwest's disability procedures.

61. The uniform response of multiple employees, each rejecting Penelope's explanation and proceeding to removal without an individualized assessment, supports a reasonable inference that the failure was not isolated.

62. Southwest knew or should have known that inadequately trained or supervised personnel could mistake neurological and motor disability manifestations for intoxication and wrongfully remove a qualified passenger.

63. Southwest's training and supervision failures caused the wrongful removal and the resulting injuries and damages alleged above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**JURY TRIAL DEMAND**

64. Penelope demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Penelope requests judgment against Southwest as follows:

A. For compensatory damages in an amount to be proven at trial, including provable out-of-pocket losses and damages for severe emotional distress, humiliation, and loss of dignity;

B. For taxable costs and attorney's fees to the extent recoverable under applicable law;

C. For pre-judgment and post-judgment interest as allowed by law; and

D. For such other and further relief as the Court deems just and proper.

DATED this 3rd day of September, 2026.

**MILLS + WOODS LAW, PLLC**

By: *<u>/s/ Sean A. Woods</u>*
Robert T. Mills
Sean A. Woods
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing First Amended Complaint and Demand for Jury Trial with the Clerk of Court using the CM/ECF system.

I further certify that all participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Ben Dangerfield*