Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone:: 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

**IN THE SUPERIORUNITED STATES DISTRICT COURT OF**

**FOR THE STATEDISTRICT OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| PENELOPE ANN HAROD, an individual,<br><br>Plaintiff,<br><br>vs.<br>v.<br><br>SOUTHWEST AIRLINES CO., a Texas corporation; BLACK CORPORATIONS 1-10; WHITE PARTNERSHIPS 1-10, and; DOES 1-100,<br>Defendants.<br><br>Defendant. | **Case No.:**<br><br>**PLAINTIFF'S. 2:26-CV-05215-JFM**<br><br>**FIRST AMENDED** COMPLAINT<br><br>**AND DEMAND FOR JURY TRIAL** |

Through undersigned counsel, Plaintiff Penelope Ann Harod (“("Penelope" or "Plaintiff” or “Penelope”),"), for her complaintFirst Amended Complaint against Defendant Southwest Airlines Co. (“("Southwest" or "Defendant” or the “Corporation”), hereby sets forth the allegations below."), alleges as follows:

**INTRODUCTION**

Plaintiff brings this civil 1. This action arisingarises from the Corporation’s unlawfulSouthwest's removal of herPenelope from Flight 3843 on October 20, 2024, based

solely on an aircraft after its employees mistook manifestations of her documented neurological and motor disabilities for intoxication.

2. Penelope had consumed no alcohol that day and had used no illicit or non-prescribed drugs. She complied with Southwest's instructions and engaged in no threatening, disruptive, or unsafe conduct.

1. 3. Penelope told Southwest's employees that her slurred speech and difficulty with balance and gait were caused by her disability. The employees refused to credit her explanation and removed her from the aircraft.

Penelope 4. Southwest did not make an individualized assessment based on objective evidence, consider a reasonable modification, or use a less restrictive response before denying transportation.

5. Penelope brings state-law negligence claims. She relies on the Air Carrier Access Act and 14 C.F.R. Part 382 only to define the standard of care governing Southwest's disability-related conduct. She does not assert a private cause of action under those federal provisions or under Title III of the Americans with Disabilities Act.

## PARTIES

6. Plaintiff Penelope Ann Harod is a disabled individual whose natural person domiciled in Arizona and is a citizen of Arizona.

7. At the time of the events alleged, Penelope was 60 years old and had documented neurological and motor impairments that substantially limit major life activities, including walking and speaking.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8. Defendant Southwest Airlines Co. is incorporated under Texas law and maintains its principal place of business in Dallas, Texas. Southwest is a citizen of Texas.

9. Southwest is a domestic air carrier that sells and provides scheduled passenger air transportation throughout the United States, including regular service into and out of Phoenix Sky Harbor International Airport.

10. At all relevant times, the Southwest employees involved in the events alleged were acting within the course and scope of their employment and in furtherance of Southwest's business. Southwest is responsible for their acts and omissions.

**JURISDICTION/VENUE**

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Penelope and Southwest are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has specific personal jurisdiction over Southwest. Southwest regularly operates flights into and out of Arizona, markets and sells air transportation to Arizona residents, and contracts to carry passengers into Arizona.

13. The transaction at issue was directed to Arizona. Penelope held a Southwest ticket for travel from Milwaukee, Wisconsin, to Phoenix, Arizona, on a Southwest itinerary. Phoenix was the final destination identified in Southwest's own ticketing records.

14. Southwest accepted Penelope's fare and undertook to carry her to Phoenix. Performance of that undertaking was intended to culminate in Arizona.

15. Penelope's claims arise out of and relate to Southwest's Arizona-directed activity. But for the Phoenix-bound itinerary, Penelope would not have boarded the

Southwest aircraft, interacted with Southwest's employees, or suffered the injuries alleged here.

16. The exercise of jurisdiction is reasonable. Southwest deliberately serves the Arizona market and could reasonably anticipate suit in Arizona arising from its performance of a contract to carry an Arizona resident to Phoenix.

17. Venue is proper because Southwest removed this action from Maricopa County Superior Court to this Court under 28 U.S.C. § 1441(a).

18. Southwest filed its motion to dismiss on August 13, 2026. Penelope files this First Amended Complaint once as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B).

## FACTUAL ALLEGATIONS

19. Penelope's disability causes slurred speech and difficulty with balance and gait. Those symptoms may resemble intoxication to an uninformed observer even when Penelope is sober.

20. On October 20, 2024, Penelope held a valid Southwest ticket for air transportation from Milwaukee to Phoenix. Southwest's ticket number for her travel was 5262573175330.

21. Penelope presented herself for transportation, received assistance boarding, boarded the aircraft, and complied with Southwest's instructions.

22. Penelope did not threaten anyone, act violently, interfere with the crew, refuse an instruction, or engage in any conduct that endangered the flight or another person.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23. Penelope's husband drove her to the Milwaukee airport. After dropping her off, he drove approximately an hour and a half away to attend a concert with his brother.

24. After Penelope boarded, multiple Southwest employees approached her and accused her of being intoxicated based on her speech, balance, and gait.

25. Penelope told the employees that she was disabled and that her speech, balance, and gait were manifestations of her disability, not alcohol or drugs.

26. Penelope had not consumed alcohol that day. She had not used illicit drugs or any prescription drug that was not prescribed to her.

27. Penelope was able and willing to comply with all safety requirements. Her disability did not prevent her from traveling safely.

28. The employees refused to listen to or credit Penelope's explanation. They did not identify objective evidence that she had consumed alcohol or drugs and did not meaningfully assess whether her disclosed disability accounted for what they observed.

29. Apart from Penelope's disability-related appearance and involuntary manifestations, the employees identified no conduct suggesting that she posed a direct threat to the health or safety of any person.

30. Southwest nevertheless removed Penelope from the aircraft and denied her transportation on the scheduled itinerary.

31. The removal occurred publicly and communicated to nearby passengers and personnel that Penelope was intoxicated or otherwise unfit to travel. She was humiliated because of symptoms she could not control.

32. The removal stranded Penelope in Milwaukee after her husband had traveled approximately an hour and a half away.

33. Penelope had to call her husband, explain what Southwest had done, and wait for him to abandon his plans and return to retrieve her.

34. Penelope and her husband then had to secure lodging in Wheeling, Illinois, for two additional days and arrange replacement travel.

35. Two days later, Penelope traveled to Phoenix through Las Vegas. She exhibited the same disability-related speech, balance, and gait but encountered no boarding or safety problem on that trip.

36. Southwest's conduct caused Penelope to lose the timely transportation she purchased, incur additional lodging, ground-travel, and replacement-transportation expenses, and remain away from her home for two additional days.

37. The incident also caused severe emotional distress, humiliation, and loss of dignity. Penelope was the direct object of the accusation and removal. Her injury was not a reaction to harm suffered by another person.

38. Multiple Southwest employees responded to Penelope's disability disclosure in the same uninformed and inflexible manner. Their coordinated response supports a reasonable inference that Southwest had not adequately trained or supervised them to recognize and respond to disability manifestations.

39. The Air Carrier Access Act prohibits an air carrier from discriminating against an otherwise qualified individual because of disability in providing air transportation. 49 U.S.C. § 41705(a).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40. At the time of the occurrence, 14 C.F.R. § 382.11(a)(1) and (3) prohibited Southwest from discriminating against a qualified individual because of disability or excluding that individual from air transportation or related services available to other persons.

41. Section 382.13 required Southwest to modify its policies, practices, or facilities when needed to provide nondiscriminatory service to a particular passenger with a disability unless the modification would create an undue burden or fundamental alteration.

42. Section 382.19(a) and (b) prohibited Southwest from refusing transportation because a disability resulted in an appearance or involuntary behavior that might offend, annoy, or inconvenience crewmembers or other passengers.

43. If Southwest relied on safety under 49 U.S.C. § 44902(b), § 382.19(c) required an individualized assessment based on reasonable judgment and the best available objective evidence. Southwest was required to consider the nature and probability of any risk, reasonable modifications that would mitigate the risk, and the least restrictive response consistent with safety.

44. Section 382.141(a)(1) and (2) required Southwest to train public-facing personnel to proficiency concerning Part 382, Southwest's procedures, appropriate responses to passengers with disabilities, and distinctions among differing abilities.

45. These provisions govern the specific disability-related conduct alleged here and supply the standard of care for Penelope's state-law claims. Penelope seeks state-law remedies for Southwest's breach of that standard.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## COUNT I

## NEGLIGENCE

48. Penelope incorporates the preceding paragraphs.

49. Southwest owed Penelope a duty to exercise reasonable care in providing air transportation and in deciding whether to remove or refuse transportation to a passenger who disclosed a disability.

50. The standard governing that duty included the requirements of 49 U.S.C. §§ 41705 and 44902 and 14 C.F.R. §§ 382.11, 382.13, and 382.19.

51. Southwest breached its duty by treating disability-related speech, balance, and gait as intoxication; disregarding Penelope's disability disclosure; failing to rely on objective evidence; failing to make the required individualized assessment; failing to consider a reasonable modification or less restrictive response; and removing her from the aircraft.

52. The involved employees committed those acts and omissions within the course and scope of their employment. Southwest is responsible for their conduct.

53. Southwest's breach caused Penelope's removal, stranding, two-day travel delay, direct out-of-pocket losses, severe emotional distress, humiliation, and loss of dignity.

54. Penelope was the direct object of Southwest's conduct. Her distress was not derivative of an injury to anyone else. It arose from being publicly branded as intoxicated, having her disability explanation rejected, being expelled from the aircraft, and being left stranded far from home.

55. That distress was severe and was a foreseeable result of Southwest's conduct.

**COUNT II** cause

**NEGLIGENT TRAINING AND SUPERVISION**

56. Penelope incorporates the preceding paragraphs.

57. Southwest owed its passengers a duty to use reasonable care in training and supervising employees who make disability-related boarding and removal decisions.

58. Section 382.141 required Southwest to train those employees to proficiency concerning Part 382 and appropriate responses to passengers with disabilities.

2. 59. A reasonably trained employee would know that slurred speech and impaired balance andor gait.

3. Federal law prohibits the Corporation from discriminating against disabled passengers.

4. Penelope informed the Corporation's employees that she was disabled and not intoxicated.

5. Those employees ignored her explanation.

6. Penelope was then forcibly removed from the aircraft.

7. As a result, she has suffered emotional distress, humiliation, economic damages, and loss of dignity.

**PARTIES, JURISDICTION, VENUE, AND TIER**

8. Plaintiff is, and was at all relevant times, a resident of the State of Arizona.

9. Defendant is, and was at all relevant times, a corporation domiciled in the State of Texas that is authorized to, and regularly and substantially does, conduct business in Maricopa County in the State of Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

~~10. Black Corporations 1-10, White Partnerships 1-10, and Does 1-100 are persons or entities that caused or contributed to cause Plaintiff's injuries or damages in this action, but of which Plaintiff is currently unaware. If and when Plaintiff becomes aware of the existence and identity of any such person or entity, Plaintiff will seek to amend this Complaint accordingly.~~

~~11. This Court has jurisdiction pursuant to the Arizona and United States Constitutions.~~

~~12. Venue is proper pursuant to A.R.S. § 12-401.~~

~~13. This action qualifies for Tier 2 discovery under and pursuant to Rule 26.2 of the Arizona Rules of Civil Procedure.~~

## ~~GENERAL ALLEGATIONS~~

~~14. Penelope has a~~ can be disability ~~that causes slurred speech and difficulties with her balance and gait.~~

~~15. On October 20, 2024, Penelope had a valid ticket for the Corporation's Flight 3843 from Milwaukee, Wisconsin, to Dallas, Texas (the "Flight"), following which she had a valid ticket for connecting flight from Dallas, Texas to her destination of Phoenix, Arizona.~~

~~16. Her husband drove her to the Milwaukee airport so she could board the Flight.~~

~~17. After he dropped Penelope off, her husband drove out of Milwaukee in order to attend a concert with his brother.~~

~~18. Penelope boarded the Flight.~~

~~19. She complied with all airline instructions.~~

~~20. The Corporation's employees approached her and, apparently based on her speech, balance, and gait issues, accused her of being intoxicated.~~

~~21. Penelope informed the Corporation's employees of her disability and that her speech, balance, and gait issues were due to that disability, not to the consumption of alcohol or any other intoxicating substance.~~

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

22. Penelope did not ingest, and had not ingested, alcohol that day.

23. Moreover, Penelope did not consume any non-prescribed prescription drugs or illicit drugs, whether on that day or any other day.

24. Nevertheless, the Corporation's employees refused to listen to her, refused to budge, and accordingly caused her to be ejected from the airplane.

25. Penelope was publicly removed from the Flight, causing her to be humiliated and stranded in Milwaukee.

26. Penelope's husband had to cancel his plans to attend the concert, turn around and drive one-and-a-half hours back to Milwaukee to pick her back up.

27. Penelope and her husband ended up having to book a stay at a hotel in nearby Wheeling, Illinois for two more days before she was able to leave on another flight to Phoenix, with a connection to Las Vegas. With the same speech, balance, and gait issues, she nevertheless had no problems boarding that flight and returning to Phoenix.

**COUNT I – Violation of 42 U.S.C. § 12182**

28. Plaintiff hereby incorporates in full all the preceding Paragraphs as if set forth herein.

29. The Corporation, acting through its employees, ejected Penelope from its airplane, which she had boarded for a flight she had a valid ticket for.

30. The Corporation, acting through its employees, ejected Penelope because of her slurred speech and impaired balance and gait, which were manifestations of her disability and not from alcohol or any other intoxicant. Penelope had informed the Corporation's employees of this information, but they disregarded it.

31. In ejecting Penelope from its airplane for a flight she had a valid ticket for, for speech, balance, and gait issues resulting from her disability, the Corporation, acting through its

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

employees, discriminated against Penelope on the basis of disability in the full enjoyment of its services, facilities, privileges, advantages, and accommodations, at a place of public accommodation it owned, leased, and/or operated.

32. As a result of the above, the Corporation violated 42 U.S.C. § 12182.

33. The Corporation's violation of 42 U.S.C. § 12182 proximately caused Penelope damages, the full extent of which will be shown at trial.

rather than**COUNT II – Negligence/Gross Negligence**

34. Plaintiff hereby incorporates in full all the preceding Paragraphs as if set forth herein.

35. The Corporation had a duty to treat Penelope with reasonable and ordinary care.

36. The Corporation, acting through its employees, ejected Penelope from its airplane, which she had boarded for a flight she had a valid ticket for.

37. The Corporation, acting through its employees, ejected Penelope because of her slurred speech and impaired balance and gait, which were manifestations of her disability and not from alcohol or any other intoxicant.

38. Penelope had informed the Corporation's employees of this information, but they disregarded it.

39. In ejecting Penelope from its airplane for a flight she had a valid ticket for, for speech, balance, and gait issues resulting from her disability and not from intoxication, even after being informed by Penelope that those issues were wholly due to her disability, the Corporation, acting through its employees, breached its duty of reasonable and ordinary care it owed to Penelope and would evaluate a disclosed disability before removing the passenger.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Moreover, by its actions as set forth above60. On information and belief, Southwest failed to train the Corporation, through itsinvolved personnel to proficiency, failed to verify their proficiency, and failed to supervise their application of Southwest's disability procedures.

61. The uniform response of multiple employees, acted with reckless indifference to Penelope's rights, because it (and they)each rejecting Penelope's explanation and proceeding to removal without an individualized assessment, supports a reasonable inference that the failure was not isolated.

40. 62. Southwest knew or should have known that ejecting her from the Flight created a risk of harm so great that it was highly probable she would suffer harm asinadequately trained or supervised personnel could mistake neurological and motor disability manifestations for intoxication and wrongfully remove a resultqualified passenger.

41. The Corporation's conduct as set forth above proximately63. Southwest's training and supervision failures caused Penelope injurythe wrongful removal and the resulting injuries and damages, the full of extent of which will be shown at trial.

**COUNT III – Negligent Hiring, Training, Supervision, and Retention**

42. Plaintiff incorporates all the preceding Paragraphs as if fully set forth herein.

43. Upon information and belief and based on the conduct set forth above, the Corporation, through its employees, was negligent and/or reckless in:

a. giving improper or ambiguous orders to employees;

b. failing to make proper regulations governing its employees;

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

c. employing improper persons or instrumentalities in work involving a risk of harm to others:

d. supervising employees' activities, and/or;

e. permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not employees, upon premises or with instrumentalities under the Corporation's control.

44. The conduct set forth in the Paragraph above proximately caused the Corporation's employees to wrongly and improperly eject Plaintiff from the Flight, which she had a valid ticket for, which in turn proximately caused her to incur damages, the full extent of which will be shown at trial alleged above.

**JURY TRIAL DEMAND**

45. Plaintiff64. Penelope demands a trial by jury foron all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following in reliefPenelope requests judgment against Southwest as follows:

A. A. For compensatory, general, and special damages;

For punitive and exemplary damages, in an amount sufficient to punish Defendant for its conduct,to be proven at trial, including provable out-of-pocket losses and damages for severe emotional distress, humiliation, and loss of dignity;

B. B. For taxable costs and to deter it and other similarly-situated parties from similar conduct in the future;

C. For her reasonable attorneys'attorney's fees and allowable costs,to the extent recoverable under any applicable law, rule, or agreement;

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

~~D.~~ C. For pre-judgment and post-judgment interest ~~on the above amounts, at the maximum legal rate, and;~~as allowed by law; and

~~E.~~ D. For such other and further relief as ~~this~~the Court deems ~~appropriate~~just and proper.

~~##~~

~~##~~

~~**RESPECTFULLY SUBMITTED** this 3rd day of September 2026.~~

~~MILLS + WOODS LAW~~DATED this 3rd day of September, 2026.

**MILLS + WOODS LAW, PLLC**

By~~:~~ /s/ Sean A. Woods
Robert T. Mills
Sean A. Woods
~~5055 N 12th St., Ste. 101~~
~~Phoenix, AZ 85014~~
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## ~~ORIGINAL~~CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, I electronically filed ~~this 3rd day of September 2026~~ ~~via AZTurboCourt~~the foregoing First Amended Complaint and Demand for Jury Trial with the Clerk of ~~the~~ ~~Maricopa County Superior~~ Court using the CM/ECF system.

I further certify that all participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ ~~*Ben Dangerfield*~~

Sean A. Woods