Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Penelope Ann Harod, an individual,<br>Plaintiff,<br>vs.<br>Southwest Airlines Co., a Texas corporation,<br>Defendant. | Case No.: CV-26-5215-PHX-DWL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable Dominic W. Lanza) |

Plaintiff Penelope Ann Harod, by and through undersigned counsel, respectfully requests that the Court deny Defendant Southwest Airlines Co.'s ("Southwest") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 21) (the "Motion"). This Response is supported by the following Memorandum of Points and Authorities and the record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Southwest sold Ms. Harod a ticket to Phoenix. Before the first flight left Milwaukee, Southwest's employees decided, based on her slurred speech and her balance and gait, that she was intoxicated. Ms. Harod told them she was disabled and that this was the cause. They did not accept that, and they had her removed from the aircraft. (Doc. 16 ¶¶ 3, 13-14, 19-30.)

Southwest's Motion makes four arguments. None of them works. On jurisdiction, Southwest does not cite the relevant controlling opinion, *Doe v. Deutsche Lufthansa Aktiengesellschaft*, 157 F.4th 1103 (9th Cir. 2025), which held that an airline that contracts to carry a passenger into a state purposefully avails itself of that state, and that tort claims arising from the trip arise out of that contract. The Airline Deregulation Act does not preempt disability discrimination claims like these. Section 44902(b) protects only a reasonable refusal. And the damages arguments rest on Arizona law, which Southwest will not commit to. (Doc. 21 at 14 n.3.)

## II. BACKGROUND

Ms. Harod lives in Arizona. (Doc. 16 ¶ 6.) She has documented neurological and motor impairments that cause slurred speech and difficulty with her balance and gait. (*Id.* ¶¶ 7, 19.) Someone who does not know her may think those symptoms are signs of intoxication, even when she is sober. (*Id.* ¶ 19.)

On October 20, 2024, Ms. Harod had a Southwest ticket for travel from Milwaukee to Phoenix. (*Id.* ¶¶ 13, 20.) Phoenix was the final destination in Southwest's own ticketing records. Southwest accepted her fare and agreed to carry her there. (*Id.* ¶¶ 13-14.)

Ms. Harod received assistance boarding the aircraft, and she complied with Southwest's instructions. (*Id.* ¶ 21.) She did not threaten anyone, interfere with the crew, or refuse any instruction. (*Id.* ¶ 22.) She had not had any alcohol that day. (*Id.* ¶ 26.) Nevertheless, multiple Southwest employees approached her and accused her of being intoxicated, based on her speech, balance, and gait. (*Id.* ¶ 24.) Ms. Harod told the employees she was disabled and that her speech, balance, and gait were caused by her

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

disability, not by alcohol or drugs. (*Id.* ¶ 25.) The employees refused to listen to her explanation or credit it. They did not identify any objective evidence that she had consumed alcohol or drugs, and they did not assess whether her disability explained what they were seeing. (*Id.* ¶ 28.) Apart from her disability-related appearance, they did not identify any conduct suggesting she was a threat to anyone. (*Id.* ¶ 29.) Southwest removed her from the aircraft anyway. (*Id.* ¶ 30.)

The removal happened in front of other passengers and told them that Ms. Harod was intoxicated or unfit to travel. (*Id.* ¶ 31.). She was left stranded in Milwaukee. (*Id.* ¶¶ 32-33.). Two days later, she flew home to Phoenix through Las Vegas, with the same symptoms, and had no problem boarding. (*Id.* ¶¶ 34-35.) She had to pay for lodging, ground travel, and replacement transportation, and she suffered severe emotional distress, humiliation, and loss of dignity. (*Id.* ¶¶ 36-37.)

The FAC pleads two state-law claims, negligence (Count I) and negligent training and supervision (Count II). (*Id.* ¶¶ 48-63.) Both claims rely on the Air Carrier Access Act ("ACAA") and 14 C.F.R. Part 382 to define the standard of care. (*Id.* ¶¶ 5, 39-45, 50, 58.) Plaintiff does not assert a private cause of action under the ACAA. (*Id.* ¶ 5.)

## III. <u>ARGUMENT</u>

### A. <u>The Court Has Specific Personal Jurisdiction Over Southwest.</u>

Southwest did not submit any declaration or other evidence with its Motion. When a motion to dismiss for lack of personal jurisdiction is decided on the written materials, the plaintiff "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss," and "uncontroverted allegations in the complaint must be taken as

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

true." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Southwest cites the rule that challenged jurisdictional allegations must be supported by "competent proof," (Doc. 21 at 4:25-28), but Southwest has not challenged any of Plaintiff's allegations with evidence. Plaintiff relies on specific jurisdiction, which requires purposeful availment or direction, a claim that arises out of or relates to the forum contacts, and reasonableness. *Doe*, 157 F.4th at 1110.

**1. Southwest Purposefully Availed Itself of Arizona.**

*Doe* controls the first prong. In *Doe*, the plaintiffs had Lufthansa tickets from Saudi Arabia to San Francisco, and a Lufthansa agent disclosed their marriage at the check-in counter in Riyadh. *Id.* at 1108. The Ninth Circuit held that "the purposeful availment test is satisfied because Lufthansa contracted to carry Doe and Roe into California," and "[t]hat contract requires performance in California, the forum state . . . ." *Id.* at 1111. The court also relied on the fact that Lufthansa regularly operated flights in and out of California. *Id.* Southwest argues that tort claims must be analyzed only under the purposeful direction test, so the tortious acts must be "expressly aimed" at the forum. (Doc. 21 at 6:20-7:2, 7:19-21.) *Doe* rejected that approach. The court said the distinction "is not a rigid rule." *Doe*, 157 F.4th at 1111. The first prong can be met by purposeful availment, by purposeful direction, or by a combination of the two. *Id.*

Here, the FAC alleges the same contacts. Southwest accepted Ms. Harod's fare and agreed to carry her to Phoenix, which was the destination in Southwest's own records. (Doc. 16 ¶¶ 13-14, 20.) Southwest regularly operates flights into and out of Phoenix and sells air transportation to Arizona residents. (*Id.* ¶¶ 9, 12.) Southwest's own Motion even

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

lists "her ticket for a flight to Arizona" as one of the connections between this case and Arizona. (Doc. 21 at 8:16-17.)

*Walden v. Fiore*, 571 U.S. 277 (2014) does not help Southwest. Under *Walden*, the question is "whether the defendant's conduct connects him to the forum in a meaningful way," not "where the plaintiff experienced a particular injury or effect . . . ." *Id.* at 290. Southwest says a plaintiff's residence in the forum is not enough. (*See* Doc. 21 at 7:5-10, 8:16-21.) Plaintiff agrees. She relies on Southwest's own conduct in selling her transportation into Arizona. *Doe* considered *Walden* and found jurisdiction based on that same type of contact. 157 F.4th at 1111.

**2. Plaintiff's Claims Arise Out of Southwest's Arizona Contacts.**

The second prong asks whether the claims arise out of or relate to the defendant's forum contacts. *Id.* at 1110. "Arises out of" requires but-for causation, and "relates to" only requires a connection. *Id.* at 1112 (citing *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023), and *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361-62 (2021)).

In *Doe*, the conduct at issue started in Saudi Arabia, not California. The Ninth Circuit still held that the tort claims arose out of Lufthansa's California contacts "because the contract for carriage into California is a but-for cause of the tort claims." *Id.* at 1112. Without that contract, the plaintiffs would not have "needed to interact with Lufthansa at all, and so the tortious conduct would not have occurred." *Id.* That holding was based on the contract, not on where the conduct took place. The court separately found that the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

claims also related to California because some of the conduct continued there. *Id.* at 1113. Either one satisfies the second prong.

Here, the same is true. Ms. Harod was on Southwest's aircraft in Milwaukee because Southwest sold her transportation to Phoenix. (Doc. 16 ¶¶ 13-15, 20-21.) Each of her claims, including the negligent training claim that Southwest addresses in a footnote (Doc. 21 at 7 n.2), arises from what Southwest's employees did to a passenger that Southwest had agreed to fly to Arizona. (Doc. 16 ¶¶ 15, 30, 61-63.) The dissent in *Doe* correctly recognized how far the majority's holding goes, stating that now "anyone who experiences any issues with a check-in process or other airline interaction anywhere in the world can sue in the intended destination of their flight, *even if there is no other connection to that destination*." 157 F.4th at 1115 (M. Smith, J., concurring in part and dissenting in part) (emphasis added). That is now the law in the Ninth Circuit, and it applies to Ms. Harod's claims.

Southwest relies mainly on *Moore v. Alaska Airlines, Inc.*, No. 19 C 2951 (N.D. Ill. Nov. 12, 2019). (Doc. 21 at 7:22-7:24.) *Moore* applied the rule that *Doe* rejected. The estate in *Moore* argued that the passenger would never have been on the plane if Alaska Airlines had not arranged flights into Illinois and sold tickets online. *Id.* at *6. The court rejected that theory under the Seventh Circuit rule that a defendant's forum contacts must be "directly related to the conduct pertaining to the claims asserted." *Id.* at *7 (quoting *Brook v. McCormley*, 873 F.3d 549, 552-53 (7th Cir. 2017)). The Ninth Circuit holds the opposite. A contract for carriage into the forum "is a but-for cause of the tort claims," and that is enough. *Doe*, 157 F.4th at 1112. *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521 (D. Ariz.

2019), arose from a surgery in Texas, and did not involve a contract that required the defendant to perform in Arizona. *See id.* at 526-27 and *generally*. Southwest also cites *Del Toro v. Atlas Logistics*, No. 1:12-cv-01535 (E.D. Cal. Mar. 4, 2013), for the point that forming a contract with a forum resident is not enough by itself. (Doc. 21 at 7:16-19.) Plaintiff does not rely on the *formation* of a contract. She relies on a contract that was to be *performed* in Arizona, which is what *Doe* found sufficient. 157 F.4th at 1111.

**3. Southwest Has Not Shown That Jurisdiction Would Be Unreasonable.**

Once the first two prongs are met, "the burden shifts to the defendant to present a 'compelling case' that jurisdiction is unreasonable." *Id.* at 1113 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Southwest does not argue reasonableness at all. Southwest regularly serves, conducts business in, and has facilities and employees operating in, the Arizona market, and could reasonably expect to be sued here over its performance of a contract to fly an Arizona resident to Phoenix. (Doc. 16 ¶¶ 9, 12, 16.)

**4. Alternatively, the Court Should Permit Jurisdictional Discovery or Transfer.**

If the Court finds that the jurisdictional record is not sufficient, Plaintiff requests leave to conduct limited jurisdictional discovery regarding Southwest's Arizona operations and the itinerary at issue. Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986)). If the Court finds that it lacks jurisdiction, Plaintiff requests

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that the case be transferred to the Eastern District of Wisconsin, where the removal occurred, instead of being dismissed. *See* 28 U.S.C. § 1631.

**B. The Airline Deregulation Act Does Not Preempt Plaintiff's Claims.**

The Airline Deregulation Act ("ADA") preempts state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Southwest's preemption argument fails under Ninth Circuit law.

**1. The Claims Do Not Relate to a "Service" as the Ninth Circuit Defines It.**

In the Ninth Circuit, "service" refers to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc), *amended*, 169 F.3d 594 (9th Cir. 1999). As the Ninth Circuit later explained, Congress did not intend the term "broadly to reach the various amenities provided by airlines, such as 'in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.'" *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (quoting *Charas*, 160 F.3d at 1261, 1266). In *National Federation*, the court reaffirmed *Charas*, rejected the argument that *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), had broadened the definition, and held that state disability-access claims against an airline were not expressly preempted. 813 F.3d at 726-27, 729.

The Ninth Circuit has applied that definition to a case like this one. In *Newman v. American Airlines, Inc.*, 176 F.3d 1128 (9th Cir. 1999), an airline removed a disabled passenger after she had boarded, and she brought state tort claims. *Id.* at 1130. The district court held those claims preempted by the ADA. *Id.* The Ninth Circuit reversed. *Id.* As

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*National Federation*, which reaffirmed that opinion, described it, *Newman* held that "the term 'service' does not refer to alleged discrimination to passengers due to their disabilities." 813 F.3d at 726-27 (quoting 176 F.3d at 1131). Southwest does not cite *Newman*.

Southwest's cases on this point do not control. Southwest cites *Fernald v. Southwest Airlines Co.*, No. 11cv0453 (S.D. Cal. Sept. 28, 2011), for the idea that *Rowe* broadened "service." (Doc. 21 at 11:3-6.) *Fernald* came out several years before *National Federation* actually held the opposite. So did *Ko v. EVA Airways Corp.*, 42 F. Supp. 3d 1296 (C.D. Cal. 2012). *Edwards v. Southwest Airlines Co.*, No. 2:19-cv-03493 (S.D. Ohio Jan. 28, 2020), is from outside this Circuit. (Doc. 21 at 10:23-26.) Also, Plaintiff is not attacking any Southwest price, schedule, route, or boarding policy. Her claim is that particular Southwest employees disregarded federal disability regulations when they removed her from the plane. (Doc. 16 ¶¶ 28-30, 51.) That claim does not regulate where Southwest flies, when it flies, or what it charges.

Southwest's "boarding procedure" argument, (*see* Doc. 21 at 10:10-11:25) asks the Court to adopt a definition the Ninth Circuit has already rejected. Some circuits read "service" to include "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling . . . ." *Nat'l Fed'n*, 813 F.3d at 727 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). The Ninth Circuit listed those cases, including *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 94 (1st Cir. 2013), and said: "*We <u>disagree</u> with these other courts* for the reasons we have explained." *Nat'l Fed'n*, 813 F.3d at 727-28 (emphasis added). *Cintron v. JetBlue Airways Corp.*, 324 F. Supp. 3d 248

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

(D. Mass. 2018), another opinion Defendant relies on, rests on *Bower*. The court there said the passenger's removal "appears to arise out of a 'boarding procedure,' which falls under the broad definition of 'service' as expressed in *Bower*." *Cintron v. JetBlue Airways Corp.*, 324 F. Supp. 3d 248, 254 (D. Mass. 2018). Nonetheless, this Court follows *Charas*, not *Bower*.

Defendant's invocation of *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014) does not change the analysis. (*See* Doc. 21 at 9:16-28, 10:11-16.) The Ninth Circuit decided *National Federation* after *Ginsberg*, and regardless held that *Ginsberg* was not "inconsistent with *Charas*," and "not a shift in the Supreme Court's interpretation of the ADA preemption provision." *Id.* at 728 (emphasis added). The question remains whether these claims relate to a "service" as *Charas* defines it. They do not.

**2. The Claims Also Enforce Federal Standards, Not State-Imposed Ones.**

The ADA's preemption clause "stops States from imposing their own substantive standards with respect to rates, routes, or services . . . ." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995). That is not what this case does. The duty of care here comes from the ACAA and Part 382. State law supplies the rest of the claim, including the remedy. (Doc. 16 ¶¶ 5, 45, 49-51, 57-58.) The Ninth Circuit approved that exact structure in *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995 (9th Cir. 2013). The ACAA preempts state standards of care for the disability-related conduct it covers, but it "does not, however, preempt any state *remedies* that may be available when airlines violate those standards." *Id.* at 1010 (emphasis in original). Thus, if state law allows, "tort plaintiffs may incorporate the ACAA regulations as describing the duty element of negligence, and rely on state law

for 'the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies.'" *Id.* (quoting *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 125 (3d Cir. 2010)). *National Federation* is consistent. The claims there were field preempted because they would have imposed California's accessibility standards in a field the ACAA regulations occupy. 813 F.3d at 734, 740. Plaintiff's claims use the federal standard.

Southwest also borrows two factors from *Cintron*. (*See* Doc. 21 at 11:7-25.) The first asks whether liability would impose "a fundamentally new set of obligations on airlines . . . ." (*Id.* at 11:14-16.) It would not. The obligations at issue are the Department of Transportation's own regulations. The second factor, the lack of a bodily injury, cannot be squared with *Gilstrap*. In *Gilstrap*, the passenger's injuries were "largely dignitary." 709 F.3d at 1011. The Ninth Circuit still held that the ACAA did not preempt her state-law claims, and it left the remedy to state law. *Id.* at 1010-11.

**C. <u>Section 44902 Does Not Establish Reasonableness as a Matter of Law.</u>**

Section 44902(b) lets a carrier refuse to transport a passenger it decides "is, or might be, inimical to safety." *See* 49 U.S.C. § 44902(b). That is not a blank check. A carrier is not immune when it acts on "'unreasonably or irrationally formed' beliefs." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868 (9th Cir. 2010) (quoting *Cordero v. Cia Mexicana de Aviacion, S.A.*, 681 F.2d 669, 671 (9th Cir. 1982)). In *Newman*, the airline refused to fly the passenger based on her appearance, her medical history, her medication, and her failure to carry a health certificate. 176 F.3d at 1131. The Ninth Circuit reversed summary judgment for the airline. It explained that "the decision to refuse passage cannot be unreasonable or irrational," and that reasonableness was a question of fact. *See id.* at 1131-

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

32. In *Cordero*, a jury could find the captain unreasonable for excluding a passenger "without even the most cursory inquiry into the complaint against him." *Eid*, 621 F.3d at 869 (quoting *Cordero*, 681 F.2d at 672). *Eid* also expressly declined to follow *Cerqueira v. American Airlines, Inc.*, 520 F.3d 1 (1st Cir. 2008). *Eid*, 621 F.3d at 868. Southwest, however, relies on *Cerqueira*. (Doc. 21 at 12:27-13:3.)

Where disability is involved, Part 382 of the Federal Code sets out what is reasonable. A carrier may not refuse transportation because a passenger's disability results in an appearance or involuntary behavior that may offend, annoy, or inconvenience crewmembers or other passengers. 14 C.F.R. § 382.19(b). Southwest quotes only the opening sentence of § 382.19(c), which allows refusals "on the basis of safety, as provided in 49 U.S.C. 44902 . . . ." (Doc. 21 at 12:4-9.) The rest of § 382.19(c) controls here. A disability-related safety refusal requires a showing that the passenger "poses a direct threat," based on an individualized assessment that relies on reasonable judgment and current medical knowledge or the best available objective evidence. 14 C.F.R. § 382.19(c)(1). The carrier must choose "the least restrictive response from the point of view of the passenger," consistent with others' safety. *Id.* § 382.19(c)(2). And "[i]n exercising this authority, you must not act inconsistently with the provisions of this part." *Id.* § 382.19(c)(3). The FAC incorporates these requirements, along with § 44902, into the standard of care. (Doc. 16 ¶¶ 42-43, 50.)

Southwest's argument rests on one allegation in the FAC: that Ms. Harod's symptoms "may resemble intoxication to an uninformed observer" even if sober. (Doc. 16 ¶ 19; *see* Doc. 21 at 13:4-14, 21-24.) That is the exact situation § 382.19(b) addresses. In

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

fact, the employees here were *not* uninformed. Ms. Harod told them what caused her symptoms. (Doc. 16 ¶ 25.) They still identified no objective evidence of intoxication and no threatening conduct, made no assessment, and removed her. (*Id.* ¶¶ 24-30.) Two days later she flew home with the same symptoms and had no problem boarding. (*Id.* ¶ 35.) *Cf. Newman*, 176 F.3d at 1132 (noting the passenger "previously had completed several flights on [the airline] without incident"). Southwest may say its employees acted reasonably. That is a defense. It is not a ground for dismissal. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Southwest's other cases do not change the result. *Shaffy v. United Airlines, Inc.*, No. 08-56307 (9th Cir. Dec. 10, 2009), is an unpublished memorandum that affirmed summary judgment on an evidentiary record. Southwest cites it for the rule that reasonableness turns on the facts the airline knew at the time, not on hindsight. (Doc. 21 at 12:18-24.) Yet here, the facts Southwest knew at the time included Ms. Harod's own explanation of her symptoms. (Doc. 16 ¶ 25.) Southwest also points to *Cordero*'s statement that a carrier need not conduct an "in-depth investigation," and it says the FAC "argues that Southwest [ ] should have conducted a detailed investigation of her medical condition . . . ." (Doc. 21 at 13:11-14, 24-27.) It does not. The FAC alleges that a reasonably trained employee "would evaluate a disclosed disability before removing the passenger." (Doc. 16 ¶ 59.) That is the individualized assessment § 382.19(c)(1) requires. Under *Cordero*, a carrier that excludes

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

a passenger "without even the most cursory inquiry into the complaint against h[er]" can be found unreasonable by the trier of fact. *Eid*, 621 F.3d at 869.

### D. The FAC Alleges Recoverable Damages.

#### 1. Southwest's Damages Arguments Depend on Arizona Law That Southwest Will Not Adopt.

Southwest's arguments about emotional distress and economic loss are both largely based on Arizona law. (Doc. 21 at 14:20-16:24.) But in footnote 3 of its Motion, Southwest "assumes Arizona law applies to Plaintiff's claims only for this stage of the case" and reserves "any later argument that a different state's law applies to her claims." (*Id.* at 15:1 n.3.) Southwest cannot win dismissal under a body of law it will not commit to.

Arizona follows the Restatement (Second) of Conflict of Laws. *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 354, ¶ 9 (Ariz. 2013) (citing *Jackson v. Chandler*, 204 Ariz. 135, 136, ¶ 5 (Ariz. 2003)). In tort cases, two important factors in resolving choice-of-law issues are "the place where the injury occurred" and "the place where the conduct causing the injury occurred . . . ." *Id.* ¶ 27. Here, both of those are in Milwaukee. (Doc. 16 ¶¶ 24-33.) Wisconsin does not require a physical injury. A plaintiff claiming negligent infliction of emotional distress must prove "severe emotional distress," but "need not prove physical manifestation of that distress." *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 434 (Wis. 1994). The FAC alleges severe emotional distress. (Doc. 16 ¶¶ 37, 54-55.) Wisconsin also holds that "the economic loss doctrine is inapplicable to claims for the negligent provision of services." *Ins. Co. of N. Am. v. Cease Elec. Inc.*, 688 N.W.2d 462, ¶ 52 (Wis. 2004). The Court does not need to decide choice of law at this stage.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**2. Dismissal Is Unwarranted Even Under Arizona Law.**

Even under Arizona law, the physical injury requirement can be satisfied by "a long-term physical illness or mental disturbance." *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 303, ¶ 8 (Ariz. App. 1999). Whether Ms. Harod's emotional distress meets that standard is a question of fact. In addition, Southwest's argument only applies to one category of damages. The FAC separately alleges lodging, ground travel, and replacement transportation expenses. (Doc. 16 ¶ 36.)

Southwest's economic loss argument fails under Arizona law as well. Southwest relies on the statement that the doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm . . . ." (Doc. 21 at 15:25-16:1.) However, the Arizona Supreme Court has called that formulation "overly broad," because "[i]n many contexts, tort recovery is available for solely pecuniary losses." *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 323, ¶ 12 (Ariz. 2010). The doctrine "may vary in its application depending on context-specific policy considerations." *Id.* at 325, ¶ 24. *Flagstaff* applied it to construction contracts because they "often are negotiated between the parties on a project-specific basis . . . ." *Id.* ¶ 25. Arizona's Court of Appeals has applied the doctrine to a services contract, but only where the plaintiffs sought "remedies for purely economic loss from [the defendant's] alleged failure to adequately perform its promises under the Agreement" and had no personal injury. *Cook v. Orkin Exterminating Co.*, 227 Ariz. 331, 335, ¶ 20 (Ariz. App. 2011). Plaintiff's claim here is different. She does not allege that Southwest performed its contract badly. She alleges that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Southwest breached a duty imposed by federal law and injured her personally. (Doc. 16 ¶¶ 37, 49-51.)

The argument also relies on a document that is not part of the pleadings. Southwest says Ms. Harod "agreed to be bound by [its] contract of carriage" and has contractual remedies. (Doc. 21 at 16:14-17.) The FAC does not plead the contract of carriage, and the Court cannot consider matters outside the pleadings on a Rule 12(b)(6) motion without converting it to a motion for summary judgment. Fed. R. Civ. P. 12(d). Further, the duty Plaintiff relies on comes from federal law, not from the terms of her ticket. (Doc. 16 ¶¶ 45, 49-50.)

**E. <u>Count II States a Claim.</u>**

Southwest does not challenge any specific element of the negligent training and supervision claim. Other than its jurisdictional footnote, Southwest relies only on the damages arguments addressed above. (Doc. 21 at 8:14 n.2, 14:20-15:24.) Parts of the Motion even address "gross negligence," (*e.g., id.* at 3:20, 15:2), "negligent hiring," (*e.g., id.* at 3:20, 4:1), and "discrimination," (*e.g., id.* at 3:19, 8:14 n.2), claims that the FAC does not plead. The FAC alleges Southwest's federal training duty, what proper training would have taught, the same response from multiple employees, Southwest's knowledge of the risk, and causation. (Doc. 16 ¶¶ 38, 44, 57-63.) Count II states a claim.

**F. <u>Any Dismissal Should Be With Leave to Amend.</u>**

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). This Court's

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Preliminary Order also discourages Rule 12 motions where an amendment could cure the defect, and it requires the moving party to certify "that the parties conferred but were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." (Doc. 13 at 4:7-19.) Southwest's certificate states only that its counsel "attempted to confer" on September 30, 2026, the day before the Motion was filed. (Doc. 21 at 17:12-17.) Southwest's statement that the FAC cannot be cured by amendment (*id.* at 16:23-24) is not supported. If the Court finds that any allegation is lacking, Plaintiff requests leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Southwest's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 21). In the alternative, Plaintiff requests leave to conduct jurisdictional discovery or transfer in lieu of any dismissal for lack of personal jurisdiction, and leave to amend as to any claim the Court finds deficient.

**RESPECTFULLY SUBMITTED** this 11th day of November 2026.

**MILLS + WOODS LAW, PLLC**

By *\/s/ Sean A. Woods*
Robert T. Mills
Sean A. Woods
5055 N 12th St., Ste. 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Autumn E. Lewis
autumn.lewis@clydeco.us
lisa.vera@clydeco.us
patricia.inabnet@clydeco.us
Edward P. Tarolli (*pro hac vice* application to be submitted)
**CLYDE & CO US LLP**
One N Central Ave., Ste. 1030
Phoenix, AZ 85004
(480) 746-4580
*Attorneys for Defendant Southwest Airlines Co.*

*/s/ Ben Dangerfield*